Mr. Justice Walker delivered the opinion of the Court. Randolph recovered judgment in an action of assumpsit against Ringgold and Palmer, upon which execution issued, and was placed in the hands of the sheriff, who received from the defendants the amount of the judgment in Arkansas Bank paper; after which, and before the paper had been accepted in payment by the plaintiff in execution, the defendant, by writ of error, brought the case before this court, where, for error in the proceedings in the court below, the judgment was reversed and set aside, and the cause sent back to the circuit court for further proceedings to be had therein. At the trial of the case in the circuit court, under the issue formed upon the plea of payment, the defendant offered the record in the first suit, the execution thereon, the return of the sheriff that the same was satisfied by the defendants by the payment of Arkansas Bank paper, and also proof that the sheriff was specially instructed by the plaintiff through his attorney to receive such paper in payment and satisfaction of the judgment, as evidence to sustain the issue on his part; but the court, on motion of the plaintiff, excluded said records and evidence from the jury! Admitting the evidence to have been, in all other respects, unexceptionable, and that the Arkansas Bank paper, under the special authority given by the plaintiff to the sheriff to receive it, was a payment, the question is, was the money, thus collected, and remaining in the sheriff’s hands, a payment of the original demand in suit ? So long as it remained in the sheriff’s hands by virtue of process, we think it was a payment, if not of the original demand, at least the judgment into which such demand had been merged: because, so long as the judgment and execution were in force, not set aside or reversed, the sheriff may be considered as having held it as the agent of the plaintiff as well as of the defendant. But so soon as the defendant, by suing out his writ of error and the proceedings thereon, caused the judgment to be reversed, he thereby in effect revoked the authority under which the sheriff held the money, and as he had not fully executed his power by paying over the money so collected, it remained in his hands subject to the demand of the owner. The plaintiff had no right to it, because, after the judgment had been set aside, there was no judicial sentence fixing the liability of the defendant to pay that sum. This question was definitely settled in the case of Close v. Stewart, (4 Wend. R. 96.) It was there held that “ the reversal of a judgment, when not technically a bar to another suit, places both parties in statu quo, except as to costs and the restitution of the money paid: and that the right of the plaintiff in error to costs in error and to a return of the money becomes perfect by the reversal of the judgment, whatever may be the result of the further litigation of the parties in the new suit.” Such, we are satisfied, was the effect of the reversal of the judgment in this case. The power of the sheriff was from that time revoked, and the defendant had a right to withdraw the money which had been placed in the bands of the sheriff, not in satisfaction of the original demand, but of the judgment which had no longer a legal existence. This being our opinion of the law, it follows that the circuit court properly refused to permit the plaintiff to introduce the evidence offered in support of the plea of payment; Finding no error in the judgment and decision of the circuit court, the same is in all things affirmed. The appellant filed a petition for reconsideration, which was overruled by the court: Mr. Chief Justice Watkins delivering the following opinion: The appellant has petitioned for a reconsideration of the opinion of the court given in this cause at the present term. The facts of the case are briefly as follows : In March, 1841, Randolph recovered judgment against Ringgold and others in the Pulaski circuit court. Execution issued to Independence county in May, 1841, returnable to September term. The'plaintiff’s attorneys endorsed on this execution that their client had instructed them to demand good money upon it. The execution came to the sheriff’s hands on the 28th June, 1841, and, on the 29th July, he endorsed it satisfied by Ringold and Palmer by payment in Arkansas paper. In February, 1842, the defendants sued out a writ of error to that judgment, and it was reversed at the July term, 1842. (See 4 Ark. 428.) On the remanding of the cause, Ringgold pleaded payment of the demand in suit, and, to support it, relied upon the execution issued upon the original judgment, and the sheriff’s return before stated; and upon the trial of the issue to this plea, in October, 1846, he obtained judgment, to which Randolph sued error, and this judgment was reversed at January term, 1840. (See 5 Eng. 279, overruling Ringgold vs. Edwards, 2 Eng. 87.) The reversal was upon the ground mainly discussed in the opinion, that a sheriff, against instructions or in the absence of instructions, had no authority to bind the plaintiff, or exonerate the defendant by receiving any thing but gold or silver in satisfaction of an execution. The court say that if the sheriff was authorized to receive bank paper, his return that he had received it, would be competent evidence of satisfaction, but no question was made or discussed as to the effect of such payment where the judgment, upon which it was made, had been reversed. The cause was again remanded, and tried anew, upon the original plea of non assumpsit and this plea of payment. On the last trial, Ringgold proved that plaintiff’s attorneys, by directions from their client, wrote to the sheriff of Independence county, under date of the 18th July, 1841, authorizing him to receive Arkansas Bank paper in satisfaction of the execution, if paid in hand and without further delay. This letter came to hand on the 28th, and, on the 29th July, the sheriff received the Arkansas money, and so endorsed the execution satisfied: and it was proved, on behalf of the plaintiff, Randolph, that the money in question had not been paid to his attorneys. The record of the original judgment was in evidence showing its reversal as before stated, and, upon this state of case, the court below excluded the evidence relied upon by the defendant, namely, the letter of the plaintiff’s attorney to the sheriff, and the execution and his endorsement of satisfaction by payment of Arkansas money. The plaintiff proved Ms demand upon the issue to the plea of non as-sumpsit, and obtained judgment from which Ringgold has appealed. The point made in the petition for reconsideration is, that the letter of instructions from the plaintiff’s attorneys to the sheriff, constituted him the special agent of the .plaintiff, who, in pursuance of his authority, accepted the Arkansas money in payment; that the debt had become merged in the judgment, and the judgment had been extinguished by the payment to the plaintiff, or, what is the same thing, to the sheriff, who, in this matter, acted, not as the officer of the law, but as the private agent of the plaintiff. The statute (Digest, title Practice in the Supreme Court, sec. 44) provides that if any judgment of the circuit court shall be reversed by the supreme court on writ of error or appeal, and such judgment may have been carried into effect before the reversal thereof, the defendant may recover from the plaintiff in such judgment the full amount paid thereon, including costs, by’ an action of debt, or on the case for so much money had and received to his use. The defendants to the original judgments availed themselves of the privilege of paying it in a depreciated currency. The most favorable position for them is, that it was the same in effect as if the payment in money had been coerced under process of execution, and not by any agreement of compromise, which they might not disaffirm, In our opinion, the instruction to the sheriff was only an authority for him to take something less than the amount of the judgment in satisfaction of it. In the absence of any proof to the contrary, the first presumption of law would be that the sheriff had done his duty by paying over the money collected to the plaintiff, and for the failure to do which, he would subject himself to a heavy penalty. When the defendants sued out their writ of error to reverse the judgment, it was a plain affirmation, on their part, that it was erroneous, and a declaration of their intention to contest the indebtedness for which it had been rendered. The judgment, upon the reversal of it, had no longer any existence, and the defendant had an absolute right to recover back from the plaintiif the amount or value of what had been paid in satisfaction of it. The satisfaction was of the erroneous judgment, and not of the indebtedness, because that had become merged in the judgment, and when the judgment was annulled, the fact of the indebtedness was again at large and open to dispute. Unless this were so, the defendant would have no right to contest the indebtedness : nor would he have the unqualified right to be placed in statu quo by restitution or recovery by suit of the amount paid on the judgment which had been reversed, else the plaintiff might defeat the suit for restitution by proving the indebtedness, and the payment, if considered as made on that account, would be an admission of it. We think then, in the absence of any proof to the contrary, the presumption of law would be that the defendant had obtained the restitution to which he was entitled. Our opinion is, broadly, that the fact of payment of a judgment, which has been reversed, is not admissible in evidence under the plea of payment in bar of the indebtedness. The defendant,- by reversing the judgment, has elected to take the chances of a trial anew, in which the plaintiff may recover less than before or'not at all. If, upon the remanding of the cause for trial de novo, the payment of the erroneous judgment could be pleaded and proved as a bar to the action, no conceivable object has been attained by the reversal. On the other hand, the plaintiff has the benefit of the chances thus opened to him by the reversal at the instance of the defendant, and he may recover judgment for a larger amount than before. If the debt was liquidated, payment of the amount due up to a certain time, would bar the accruing interest as stipulated, if for more than the legal rate to which the plaintiff is entitled. Nor is the evidence admissible as proof of partial payment of the indebtedness, because it was neither paid or accepted upon that account, and would be wholly inconsistent with the idea of the plaintiff’s right to dispute the indebtedness. We can suppose, in accordance with what seems to be contemplated by the statute, that, upon the remanding of the cause after reversal, the defendant, if he choose to adopt that mode of recovering back the money, might plead, by way of set-off, or in the nature of a cross action, that the plaintiff is indebted or impliedly liable to him for the amount so paid upon the erroneous judgment, and this would probably place the rights of the parties just as they stood by operation of law, upon the reversal. We can suppose, too, that if separate cross judgments have been obtained by parties so situated, the court, on application of either party, would order one to be offset against the other. The law, for the protection of the debtor, may intend that a payment made upon a judgment, with or without execution, is a payment made by force of legal coercion; but a voluntary payment is an act that depends upon intention. An illustration of this is where the debtor is sought to be charged by an alleged payment in order to repel the bar of limitation. The payment must be made upon a particular debt, either by agreement of the parties, or by operation of law, where they have omitted to make any specific appropriation. In this case, the evidence offered of payment of an erroneous judgment, did not conduce to show a payment of the indebtedness in controversy, by any act of the parties or any intendment of law. We need not, therefare, indulge in any presumption of fact, from the eyidence here, as to what became of the money in question, or whether it has remained in the custody of the sheriff, .either as sheriff or special agent of the plaintiff. The. law presumes that it has found its way back to the defendant who was wrongfully forced to pay it. Upon further consideration, we are satisfied that the petition ought to be overruled.